IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. 20-207 |
| | : | CIVIL ACTION NO. 23-2063 |
| JOSHUA OBED ALTRUZ | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                                       June 2, 2023

The *pro se* movant, who is currently serving an aggregate 169-month period of incarceration after pleading guilty to two counts of Hobbs Act robbery (18 U.S.C. § 1951(a)) and two counts of carrying, using, and brandishing a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)(1)), has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. In this motion, the movant claims that the court should vacate his two section 924(c) convictions and sentences based on *United States v. Taylor*, 142 S. Ct. 2015 (2022), where the United States Supreme Court held that attempted Hobbs Act robbery does not qualify as a predicate crime of violence under the "elements clause" in 18 U.S.C. § 924(c)(3)(A).

The court has reviewed the motion and will dismiss it because it plainly appears from the motion and the record of the proceedings in this case that the movant is not entitled to relief. More specifically, *Taylor* is inapplicable to the movant's case because it only applies to attempted Hobbs Act robbery, and the movant unequivocally pleaded guilty to two completed Hobbs Act robberies, with those completed robberies serving as the predicate offenses for his two section 924(c) convictions.

I.   PROCEDURAL HISTORY

On July 14, 2020, the grand jury returned an indictment charging the *pro se* movant, Joshua Obed Altruz ("Altruz"), with two counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a)

and two counts of carrying, using, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1). *See* Doc. No. 1. On September 1, 2021, Altruz entered an open guilty plea to all charges in the indictment. The factual basis for this plea was as follows:

> On February 6, 2020 at approximately 3:11pm, the Taylor Family Fuel and Mini Mart, located at 1907 Stefko Boulevard, in Bethlehem was robbed by a Hispanic male, approximately 6 feet tall with scruffy facial hair, wearing a green/gray colored zip-up style coat, black glasses and a knit hat. The victim cashier observed the robber approach the counter and hand him a $2 scratch-off lottery ticket to be cashed in. As the victim cashier opened the cash register, the robber opened his coat and brandished a pistol with a brown colored frame tucked inside his waistband. The victim cashier handed the robber all the money in his cash register, which was determined to be $180 in U.S. currency, and then the robber fled the store.
>
> The Taylor Family Fuel and Mini Mart security surveillance cameras were fully operational on February 6, 2020 and captured the entire robbery committed, which when viewed corroborated the victim cashier's account of the robbery and description of the robber. B[ethlehem Police Department ("BPD")] officers were able to determine from viewing the store's surveillance camera footage that the robber fled in a gold-colored Honda Civic with tinted windows and a visible indentation in the driver side door panel.
>
> Approximately 3 ½ hours later at 6:46pm, the Rite-Aid, located at 104 East 3rd Street, in Bethlehem was robbed by a Hispanic male, approximately 6 ft. tall, with scruffy facial hair, wearing a green/gray colored zip-up style coat, glasses and a black hat. The robber entered the pharmacy section of the store, approached the counter and passed two torn pieces of paper and an unopen bottle of Advil to the victim pharmacy assistant. The victim pharmacy assistant stated one of the torn pieces of paper contained a hand-written note which read, "act normal, all the opioids and Xanax in a bag now!! Don't make this harder than it need to be." After presenting the note, the robber lifted his coat and brandished a two-tone pistol with a brown colored frame inside his waistband. The victim pharmacy assistant stated she gave the note to the victim pharmacist. The victim pharmacist stated she read the note and the robber then made a verbal demand for the prescription medication. The victim pharmacist gave the robber two bottles of generic Xanax prescription medication, one bottled [sic] contained 454 pills (.5 mg) valued at $277.99 and the other bottle contained 44 pills (.25 mg) valued at $24.99. The robber fled and left the note.
>
> BPD Officers immediately responded to the Rite-Aid and began speaking with store pharmacist and pharmacist assistant and obtained a description of the

robber and collected evidence. Additional BPD Officers out on patrol located a driver matching the description of the robber from both robberies (the driver side window was down and the operator was visible) and the vehicle the suspect was driving was a gold-colored Honda Civic with tinted windows and a visible indentation in the driver side door panel (reg. # LFM9558). This vehicle matched the description of the getaway vehicle from the earlier Taylor Family Mini Mart robbery (seen on the surveillance video footage). BPD Officers decided to conduct a felony traffic stop of this gold-colored Honda and the suspect.

The felony traffic stop was conducted at East 4th and Hill Streets in the City of Bethlehem. Immediately after pulling the vehicle over, the sole occupant and driver, subsequently identified as Joshua Altruz, began screaming out the driver's window. BPD Officers yelled for the Altruz to remain in the vehicle, he did not initially comply and exited the vehicle, but then went back into the vehicle. Once additionally [sic] back-up BPD Officers arrived, they gave verbal commands to [sic] for Altruz to exit the vehicle, and he complied. Altruz informed officers that he had a gun in the front waistband of his pants. A BPD Officer conducted a pat down search for weapons and removed a two-tone Glock 26, which had a brown frame and black slide from the inside his [sic] Altruz'[s] underwear. The firearm was made safe and secured in a patrol vehicle and identified as Glock 26, 9mm, bearing serial number: BHXL651. The Glock was loaded with 10 rounds of ammunition in the magazine with no bullet in the chamber. BPD Officers also located $62 in U.S. currency on Altruz'[s] person.

BPD Officers searched Altruz's vehicle and under the front driver seat of the vehicle a white Rite-Aid bag was located containing the two pill bottles that matched the two bottles of stolen prescription Xanax as described by the victim Rite-Aid pharmacist. Located on the front passenger floorboard was a clear [Z]iplock style 1" x 1" plastic bag that contained approximately[ ]14 round blue colored pills, stamped with "M" and "30" on them (pill identifier utilized on these pills identified them as "oxycodone hydrochloride"). In the trunk officers located a gray hooded jacket with four pockets on the front with buttons, which was consistent with what the robber was wearing in both the surveillance video footage from the Taylor Mini Mart and the Rite-Aid. The gray jacket contained a wallet that belonged to Joshua Altruz with $23 of U.S. currency inside. A gray Sentry safe was also located in the trunk.

A BPD Officer drove the Rite-Aid victim pharmacy assistant who the robber had passed the note to, in a patrol vehicle to the vehicle stop and conducted a show-up identification, where the victim positively identified Altruz as the armed robber of the Rite-Aigd [sic].

The Rite-Aid surveillance cameras were fully operational on February 6, 2020 and captured the entire robbery committed by Alturz [sic] on video, which when viewed corroborated the victims [sic] account of the robbery and the description of the robber.

> The Taylor Family Fuel and Mini Mart is a convenient store and Rite-Aid is a pharmacy and both businesses engage in interstate commerce by providing for sale commodities produced and transported from other states to Pennsylvania, and sold to customers.
>
> BPD Officers went to 1151 Mechanic Street in the City of Bethlehem to see if they could speak to Altruz'[s] family as this was his residence. Suzzett Rhoades Arjemi (Altruz'[s] grandmother) informed that he had left the residence at approximately 3pm on February 6, 2020 and was gone for about 30 minutes, and she was unsure where he may have gone. Arjemi stated that he left again at approximately 5pm and had not returned. Ana Ramirez Rhode (Altruz'[s] aunt) informed he owned a gold in color Honda Civic that was involved in a motor vehicle crash in November/December 2019. Rhode also stated Altruz owned one firearm and that he usually kept it in his vehicle in a safe.

Gov't's Mem. of Guilty Plea at 3–6, Doc. No. 35.[1]

This court then held a sentencing hearing on December 9, 2021, during which the court sentenced Altruz to an aggregate sentence of 169 months' incarceration. *See* Doc. No. 42.[2] Altruz did not appeal from his judgment of sentence.

Altruz filed the instant motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody on May 24, 2023.[3] *See* Doc. No. 44. The motion contains one claim for relief:

> 18 U.S.C 924(c) [is] unconstitutionally vague . . .
>
> The defendant may have been unlawfully convicted [and] sentenced under 18 USC 924(c) because he did not commit a crime of violence. Just like in [*United States v. Taylor*, 142 S. Ct. 2015 (2022)], the defendant's predicate offense involves violating Hobbs Act 18 USC 1951(a). For purposes of 924(c), a federal felony

---

[1] Although the guilty plea hearing has not been transcribed, the court reviewed the audio recording of that hearing, and Altruz admitted to the government's recitation of the factual basis for his plea as it had set forth in its guilty plea memorandum.

[2] The court's written judgment of sentence was filed on December 10, 2021. *See* Doc. No. 41. Although the aggregate sentence was 169 months' incarceration, the court sentenced Altruz to concurrent periods of one month of incarceration on the Hobbs Act robbery counts, to run consecutive to two consecutive periods of 84 months' incarceration on the section 924(c)(1) offenses. *See* J. at 2.

[3] Although the clerk of court did not docket the motion until May 30, 2023, the federal "prisoner mailbox rule" provides that a *pro se* prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 275–76 (1988). Here, Altruz declared that he placed the motion in the prison mailing system on May 24, 2023. *See* Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Fed. Custody ("Mot.") at 13, Doc. No. 44. As such, the court has deemed May 24, 2023, to be the filing date.

> qualifies as a crime of violence if it meets the residual [and] elements clauses in 18 USC 924(c)(3)(A) [and] (c)(3)(B). Both of these clauses have been ruled unconstitutionally vague by the U.S. Supreme Court. The government does not prove that the defendant played a significant role in this instant offense (the 1 month sentence [undecipherable] a minor role). In order to legally gain a conviction, the government must prove that the defendant intended to complete the offense [and] that he completed a substantial step towards that end. The defendant's actions are more similar to an attempt/conspiracy to commit Hobbs Act robbery.

Mot. at 5, Doc. No. 44. Regarding the timeliness of the motion, Altruz contends that his motion is timely because he filed it within one year of the date the Supreme Court decided *Taylor*. *See id.* at 12. For relief, Altruz seeks to have the court vacate the sentences imposed for his two section 924(c) convictions. *See id.* at 13.

## II.   DISCUSSION

### A.   Law Generally Applicable to Section 2255 Motions

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct their sentence. Motions filed "pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002) (citing *Davis v. United States*, 417 U.S. 333, 343 (1974)). A federal prisoner may file a section 2255 motion when: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack." *United States v. Kelley*, No. 3:12-CR-130, 2017 WL 1078172, at *2 (M.D. Pa. Mar. 22, 2017) (citing 28 U.S.C. § 2255(a)).

To obtain relief under section 2255, a movant must demonstrate a "fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962). Further, the contended "error must present exceptional circumstances where the need

5

for the remedy afforded by the writ of habeas corpus is apparent." *United States v. Williams*, 615 F.2d 585, 589 (3d Cir. 1980) (citations and internal quotation marks omitted).

Generally, a movant is entitled to a hearing on their section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). Accordingly, the court may dismiss a section 2255 motion without a hearing "where the record affirmatively indicates that the claim for relief is without merit." *Page v. United States*, 462 F.2d 932, 933 (3d Cir. 1972); *see also* R. 4 of the Rules Governing Section 2255 Proceedings in the United States District Courts ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.").

### B.  Analysis

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), section 2255 motions filed by federal prisoners are generally subject to a one-year limitations period. *See* 28 U.S.C. § 2255(f). As to when this one-year limitations period begins to run, section 2255(f) provides, in relevant part:

> The limitation period shall run from the latest of–
>
> **(1)** the date on which the judgment of conviction becomes final;
>
> **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

Out of these four possible start dates for the one-year limitations period, Altruz only invokes the third, by contending that he filed his motion within one year of *Taylor*.[4] *See* Mot. at 12. While it would be an intriguing endeavor to determine whether *Taylor* would permit a later start date for Altruz's motion, the court need not address it because Altruz is not entitled to relief under *Taylor* anyway.[5] *In re Rosado*, 7 F.4th 152, 157 (3d Cir. 2021) ("Both district and appellate

---

[4] Although Altruz does not reference the first possible start date (section 2255(f)(1)), the court notes that a judgment of conviction becomes final for a "defendant [who] does not pursue a timely direct appeal to the court of appeals, . . . on the date on which the time for filing such an appeal expired." *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). As already indicated, the court entered Altruz's written judgment on December 10, 2021. Because Altruz did not pursue a direct appeal, his judgment of conviction became final, for purposes of section 2255(f)(1), 14 days after judgment was entered, i.e., December 24, 2021, when his time to file a direct appeal expired. *See* Fed. R. App. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal."). Altruz then had until December 24, 2022, to timely file a section 2255 motion under section 2255(f)(1). Since he did not file the instant motion until May 24, 2023, it would not be timely filed under section 2255(f)(1), and Altruz has not articulated any basis for the application of equitable tolling. *See Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 619 n.1 (3d Cir. 1998) (explaining that section 2255 statute of limitations, as with the habeas statute of limitations, is subject to equitable tolling); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.").

[5] The Third Circuit Court of Appeals has yet to address whether *Taylor* recognized a new right and made it applicable to cases on collateral review. Other federal courts have examined this issue and have reached conflicting decisions. *Compare In re Williams*, No. 22-13997-B, 2022 WL 18912836, at *3 (11th Cir. Dec. 15, 2022) ("The Supreme Court in *Taylor* did not announce a new rule of constitutional law, but rather interpreted, as a matter of statutory analysis, the meaning of the term 'crime of violence' in § 924(c), and, more specifically, the proper application of the elements clause in § 924(c)(3)(A) and whether it covered attempt offenses like attempted Hobbs Act robbery. The Court did not hold, or otherwise suggest, that the elements clause was unconstitutionally vague or overbroad, like it had done with regard to § 924(c)(3)(B)'s residual clause in [*United States v. Davis*, 139 S. Ct. 2319 (2019)]. The Court's interpretation of a substantive criminal statute, using established rules of statutory construction, cannot announce a new rule of constitutional law under § 2255(h)."), *and Royal v. United States*, No. 2:20-CV-127, 2023 WL 3662739, at *4 (E.D. Tenn. May 25, 2023) (concluding that section 2255(f)(3) "does not excuse the untimeliness of [the movant's] claim under *Taylor*," and noting that "[t]he Sixth Circuit has recognized, albeit in an unpublished opinion, that '*Taylor* involved a question of statutory interpretation and did not announce a new, retroactively applicable rule of constitutional law.'" (quoting Order at 3, *In re David Patterson*, No. 22-5683 (6th Cir. Dec. 15, 2022), Doc. No. 22)), *with United States v. Fender*, No. 16-cr-124, 2023 WL 3663016, at *2 (E.D.N.Y. May 25, 2023) (compiling district court cases concluding that section 2255 movants could rely on *Taylor* under section 2255(f)(3)), *and Aponte v. United States*, No. 16 Civ. 3511, 02 Cr. 1082-4, 2023 WL 3600848, at *4 (S.D.N.Y. May 23, 2023) (conducting analysis under *Teague v. Lane*, 489 U.S. 288 (1989) and concluding that "*Taylor* applies retroactively to petitioners . . . who seek collateral review of their convictions under § 2255").

courts may, but need not, consider timeliness sua sponte." (citing *Day v. McDonough*, 547 U.S. 198, 209 (2006) and *Wood v. Milyard*, 566 U.S. 463, 473 (2012))).

In *Taylor*, the United States Supreme Court held that "*attempted* Hobbs Act robbery does not satisfy the elements clause" in section 924(c)(3)(A). 142 S. Ct. at 2020.[6] The Court specifically did not address *completed* Hobbs Act robbery. *See id.* ("Whatever one might say about completed Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause."). However, the Third Circuit Court of Appeals has addressed completed Hobbs Act robbery post-*Taylor* and "join[ed] the unanimous Circuit authority in holding that a completed Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)." *United States v. Stoney*, 62 F.4th 108, 113 (3d Cir. 2023).

Here, Altruz pleaded guilty to and was sentenced for two counts of *completed* Hobbs Act robbery.[7] In addition, these two offenses were the predicate crimes of violence supporting the two

---

[6] In reaching this conclusion, the Court explained:

> Yes, to secure a conviction the government must show an intention to take property by force or threat, along with a substantial step toward achieving that object. But an intention is just that, no more. And whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property.

*Taylor*, 142 S. Ct. at 2020.

[7] The court recognizes that the indictment referenced the word "attempted" in both Hobbs Act counts. *See* Indictment at 1–2 (stating that Altruz "obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, by robbery, and *attempted* to do so, . . . [by] unlawfully [taking] and obtain[ing] approximately $180 belonging to Taylor Family Fuel and Mini Mart, from employees of that business and against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future to their person and property, that is, by brandishing a firearm, threatening and controlling the victim employees and stealing money") (emphasis added)); *id.* at 4 (stating that Altruz "obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, by robbery, and *attempted* to do so, . . . [by] unlawfully [taking] and obtain[ing] approximately two bottles of prescription Xanax medication containing a total of 298 pills with a value of at least $300, belonging to Rite Aid Pharmacy, from employees of that business and against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future to their person and property, that is, by brandishing a firearm, threatening and controlling the victim employees and stealing the medication" (emphasis added)). Nonetheless, Altruz did not plead guilty to attempted Hobbs Act robbery, and the factual basis of his plea, as set forth above, shows that he completed the two robberies, and his conduct surely was not "di minimis" as asserted in the instant motion.

section 924(c)(3) charges/convictions. *See* Indictment at 3 (stating that Altruz "knowingly used, carried, and brandished a firearm, that is, a Glock 26, 9mm semi-automatic pistol, bearing serial number BHXL651, loaded with 10 live rounds of ammunition, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, *robbery which interferes with interstate commerce*, in violation of [18 U.S.C. § 1951(a)], as charged in Count One of this indictment" (emphasis added)); *id.* at 5 (stating that Altruz "knowingly used, carried, and brandished a firearm, that is, a Glock 26, 9mm semi-automatic pistol, bearing serial number BHXL651, loaded with 10 live rounds of ammunition, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, *robbery which interferes with interstate commerce*, in violation of [18 U.S.C. § 1951(a)], as charged in Count Three of this indictment" (emphasis added)). Therefore, *Taylor* does not apply to this case, and the court must dismiss Altruz's section 2255 motion because it is plainly meritless. *See Blewitt v. United States*, No. 1:17-cr-114, 1:22-cv-241, 2023 WL 3294342, at *3–4 (D. Me. May 5, 2023) ("While *Taylor* might constitute a new retroactively applicable rule that would generate a new limitations period under § 2255(f)(3) for an attempted Hobbs Act robbery, because Petitioner was convicted of a completed Hobbs Act robbery and not an attempted Hobbs Act robbery, *Taylor* does not undermine the validity of Petitioner's sentence. . . . Because *Taylor* does not apply where a defendant was convicted of a completed robbery, Petitioner's motion does not invoke a newly recognized right, § 2255(f)(3) does not apply, and the motion would fail on the merits even if it were filed timely. Accordingly, dismissal is warranted." (internal citations omitted)); *see also Chapman v. United States*, No. 3:23-cv-225, 3:20-155-1, 2023 WL 3397416, at *3 (W.D.N.C. May 11, 2023) ("Petitioner argues that his claim on his second ground for relief is timely because it was brought within a year of *Taylor*. *Taylor* provides Petitioner no relief. Petitioner's predicate

9

crime of violence was aiding and abetting Hobbs Act robbery, not attempted Hobbs Act robbery. Section 2255(f)(3), therefore, does not save this ground for relief.").[8]

### III. CONCLUSION

For the reasons set forth above, Altruz's section 2255 motion is plainly meritless. Consequently, the court will dismiss the motion without requiring the government to respond to it because the record conclusively demonstrates that Altruz is not entitled to relief. Further, the court will not issue a certificate of appealability.[9]

A separate order follows.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[8] The court notes that Altruz mistakenly states in his motion that "both [clauses in 18 USC 924(c)(3)(A) and (c)(3)(B)] have been ruled unconstitutionally vague by the U.S. Supreme Court." Mot. at 5. The Court has only held that the "residual clause," section 924(c)(3)(B), is unconstitutionally vague. *See Stoney*, 62 F.4th at 111 n.2 ("In 2019, the Supreme Court ruled that § 924(c)(3)(B), also known as the 'residual clause' and previously an alternate avenue for defining a 'crime of violence,' is unconstitutionally vague. *See United States v. Davis*, ––– U.S. –––, 139 S. Ct. 2319, 2323–24, 204 L.Ed.2d 757 (2019) (holding that the language of the residual clause was unconstitutionally vague and violated the Due Process Clause). Therefore, now only § 924(c)(3)(A), the 'elements clause,' contemplates whether a felony offense qualifies as a crime of violence."). To the extent that Altruz is attempting to argue that the "elements clause," section 924(c)(3)(A), is unconstitutionally vague, this argument is also meritless. *See United States v. Green*, 67 F.4th 657, 670 (4th Cir. 2023) ("[O]ur precedent cannot support Green's argument that the elements clause is unconstitutionally vague. In contrast to the residual clause, we have stated that 'there is no colorable argument that the elements-based categorical approach of § 924(c)(3)(A) suffers from any [ ] indeterminacy.' [*United States v. Simms*, 914 F.3d 229, 252 (4th Cir. 2019) (en banc)]. The Supreme Court has similarly characterized the application of the elements clause as a 'straightforward job' that does not require 'an abstract judicial inquiry.' *Taylor*, 142 S. Ct. at 2025." (second alteration in original)); *In re Williams*, 2022 WL 18912836, at *3 (explaining that *Taylor* "did not hold, or otherwise suggest, that the elements clause was unconstitutionally vague or overbroad, like it had done with regard to § 924(c)(3)(B)'s residual clause in *Davis*").

[9] To be entitled to a certificate of appealability, Altruz must show, *inter alia*, reasonable jurists would debate whether this court was correct in its ruling. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) ("To obtain a COA under § 2253, a habeas petitioner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes a showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement further." (internal quotation marks and citation omitted)). The court does not find that a reasonable jurist would disagree with the court's assessment of Altruz's claims.